Filed 4/29/25 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PABLO ARREDONDO PADRON, | B333512 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV19456) |
| v. | |
| HUGO OSOY, | ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed on April 11, 2025, be modified as follows:

1. On pages 13 to 14, the second sentence of footnote 5 is modified to read as follows:

> However, Padron fails to identify any evidence showing the circumstances of such a payment or even any competent evidence that such a payment was made.

2. At the end of the last full paragraph on page 17, after the sentence ending " '[t]he employment . . . was contracted to be . . . for less than 52 hours,' " add as footnote 7 the following

footnote, which will require renumbering of all subsequent footnotes:

> **7** In a petition for rehearing, Padron contends there was a factual dispute regarding how long the parties agreed the project would take.  Not so.  In his responsive separate statement, Padron stated, "Undisputed that [Padron] had 'planned' to spend 10 to 12 days to complete the job, that [Padron] 'allowed' that it might take 10 to 12 days, and that [Padron] 'agreed' to complete the job *within* the 10-to-12-day time frame."  Padron's rehearing petition cites Osoy's deposition testimony that at one point Padron estimated the project would take three to five days, but Padron nowhere referenced this evidence in opposing summary judgment and we therefore do not consider it.  (*Parsons v. Estenson Logistics, LLC* (2022) 86 Cal.App.5th 1260, 1265, fn. 5.)

3.  At the end of the first full paragraph on page 26, after the sentence ending "and cannot sue in tort," add as footnote 11 the following footnote:

> **11** Padron contends he is permitted to sue in tort under section 2750.5, which establishes a presumption that a worker who is performing services without having a required contractors' license "is an employee rather than an independent contractor." (*Ibid.*)  This argument is meritless.  Section 2750.5 does not authorize an injured worker who is deemed an "employee" under sections 3351(d) and 3352, subdivision (a)(8) to sue in tort. (*Furtado v. Schriefer* (1991) 228 Cal.App.3d 1608, 1617.)

There is no change in the judgment. Appellant Padron's amended petition for rehearing is denied.

_____

WEINGART, J.          ROTHSCHILD, P. J.          BENDIX, J.

Filed 4/11/25 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PABLO ARREDONDO PADRON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HUGO OSOY, <br><br> Defendant and Respondent. | B333512 <br><br> (Los Angeles County <br> Super. Ct. No. 20STCV19456) |

———————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Affirmed.

The Yarnall Firm, Delores Yarnall; Martinian & Associates, Inc. and Arash H. Zabetian for Plaintiff and Appellant.

Horvitz & Levy, Curt Cutting, Jeffrey Vides; Ford, Walker, Haggerty & Behar, John K. Paulson and Emily T. Zinn for Defendant and Respondent.

———————————

# INTRODUCTION

Hugo Osoy employed Pablo Arredondo Padron to make improvements to Osoy's home. Before Padron completed the project, he fell from a ladder and was injured. When Padron sued Osoy for negligence, the trial court granted summary judgment in Osoy's favor, finding Padron's claims for his on-the-job injuries were exclusively covered by workers' compensation. Padron now appeals.

Labor Code[1] section 3351, subdivision (d) (section 3351(d)) establishes a default rule that workers' compensation exclusively covers individuals such as Padron who are employed by owners or occupants of a "residential dwelling" to perform "duties [that] are incidental to the ownership, maintenance, or use of the dwelling . . . or . . . are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant." (*Ibid.*) Section 3352, subdivision (a)(8)(A) (section 3352(a)(8)(A)) creates an exception to that default rule, excluding from workers' compensation coverage a worker whose employment within the 90 days preceding the accident "was, or was contracted to be, for less than 52 hours." (*Ibid.*)

The central question in this appeal is the meaning of section 3352(a)(8)(A)'s "was, or was contracted to be, for less than 52 hours" language. Padron and Osoy contracted for a project that would take *more* than 52 hours; Padron was injured *less* than 52 hours into the job. Padron contends that because his employment ultimately was for less than 52 hours due to his injury, it "was . . . for less than 52 hours" under section

---

[1] All undesignated code references are to the Labor Code.

3352(a)(8)(A) and he is therefore not subject to workers' compensation exclusivity.

We disagree. When employment is contracted to be for more than 52 hours, the exclusion in section 3352(a)(8)(A) does not turn on the fortuity of how many hours into that employment a worker is when they are injured. Rather, section 3352(a)(8)(A) excludes from workers' compensation (1) employment contracted to be for less than 52 hours, and (2) employment for less than 52 hours where no time period was contracted for. Because Padron contracted to do more than 52 hours of work, section 3352(a)(8)(A) does not exclude him from workers' compensation coverage regardless of his injury occurring in less than 52 hours of work.

We also reject Padron's other arguments that he was not subject to the workers' compensation system. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Padron Is Injured While Doing a Home Remodeling Project for Osoy

Osoy hired Padron in 2019 to install two skylights in Osoy's home. Padron and Osoy agreed the project would take 10 to 12 days, eight hours each day—in other words, 80 to 96 hours. Given the type of work involved, Padron was required to have a contractor's license, but he did not have one.

On July 31, 2019, while working on one of the skylights, Padron fell from a ladder and suffered serious injuries. The fall resulted in Padron losing consciousness; he does not remember what caused him to fall. Osoy was holding the ladder when Padron fell.

Padron's injuries prevented him from doing any other work to complete the project. Osoy ultimately paid Padron around $1,000 for the work he performed before the fall.

## B. Padron Sues Osoy

On May 21, 2020, Padron sued Osoy in superior court. Padron asserted claims for negligence, premises liability, and breach of sections 3706 through 3709, which permit an injured worker otherwise subject to workers' compensation to pursue tort remedies where his employer fails to obtain workers' compensation insurance or to properly self-insure for workers' compensation liability.

Padron alleged Osoy had hired him "as part of an extensive remodeling and improvement project" at Osoy's house, and that Padron was responsible for "affix[ing] a skylight" and "tak[ing] care of the weatherproofing, roofing, and the interior dry-walling." Padron alleged that Osoy was a "de facto[ ] employer[ ]" because he hired Padron to perform tasks which required a professional license while knowing that Padron was unlicensed. Padron alleged that Osoy was at fault for the accident for several reasons, including that Osoy supplied Padron with a defective ladder, failed to properly hold the ladder, and violated safety laws imposed on employers under the California Occupational Safety and Health Act of 1973 (Cal-OSHA; § 6300 et seq.).

Anticipating Osoy's workers' compensation exclusivity defense, Padron's complaint alleged he was not limited to recovering under the workers' compensation system because Osoy "did not have . . . workers' compensation insurance for [Padron] and his work related injuries, and/or [Padron] worked on [Osoy's house] for [Osoy] for less than [52] hours in the preceding [90] calendar days from the date of the injury."

4

## C.    Osoy Moves for Summary Judgment

After both sides undertook discovery, Osoy filed a motion for summary judgment, or in the alternative summary adjudication, asserting that Padron's exclusive remedy was workers' compensation.[2]

Osoy argued that Padron's recovery was limited to workers' compensation because he was a residential employee under section 3551(d) and did not fall within the exclusion from workers' compensation for such employees set forth in section 3352(a)(8)(A).  According to Osoy, the section 3352(a)(8)(A) exclusion did not apply because Padron had contracted to work for more than 52 hours.  At Padron's deposition, Osoy adduced testimony that Osoy had hired Padron to install two skylights in Osoy's home, one in a hallway and the other in a bathroom.  To perform the installation, Padron had to remove shingles from the roof, cut through the roof, remove drywall from the ceiling inside, frame the skylights, install the skylights, and install drywall around the frame.  Padron testified that he "had planned" to take between 10 and 12 days to install the two skylights, with each day being eight hours of work.  He also testified that he told Osoy the project would take 10 to 12 days and, "what . . . we agreed to

_____

[2] Osoy's motion argued in the alternative that if workers' compensation exclusivity did not apply the court should grant summary judgment because the undisputed facts showed Osoy was not negligent.  As we conclude Padron's exclusive remedy is workers' compensation, we do not discuss the parties' arguments concerning negligence.  We likewise do not discuss the parties' dispute over the admissibility of a declaration Padron submitted as part of his summary judgment opposition, as the statements in that declaration are irrelevant to whether workers' compensation was Padron's exclusive remedy.

was gonna be 10 or 12 days." Padron estimated to Osoy that the skylight job would cost $4,000; Osoy eventually paid Padron $1,000.[3]

Osoy also relied on Padron's deposition testimony that he worked at a job in Malibu Monday through Friday, and did side jobs on weekends or on weekdays after his Malibu job. On Osoy's project, Padron was assisted by another worker for four weekend days. Padron then worked on the project himself for three weekday afternoons. He fell on the third weekday; he had worked three hours that day before he fell.

Osoy adduced evidence that he had a homeowners' insurance policy from the Interinsurance Exchange of the Automobile Club (AAA), which included workers' compensation coverage. The policy provided that if any of its provisions were inconsistent with the workers' compensation statutes it would be deemed amended to conform to the statutes.

## D.     Padron's Opposition to Summary Judgment

In his summary judgment opposition, Padron first contended that Osoy could not rely on the exclusivity defense because he had not pleaded it as an affirmative defense when answering the complaint.

As to the merits of the exclusivity defense, Padron asserted that section 3352(a)(8)(A) excluded him from the workers' compensation scheme because he had worked less than 52 hours

---

[3] Section 3352, subdivision (a)(8)(B) also excludes from workers' compensation residential employment that "was, or was contracted to be, for wages of not more than one hundred dollars ($100)." There is no dispute this provision did not exclude Padron from workers' compensation as Padron was paid, and contracted to be paid, more than $100.

6

before being injured. Padron did not dispute that he had planned to spend 10 to 12 days on the project, and that he agreed to complete the job within the 10-to-12-day time frame. According to Padron, the section 3352(a)(8)(A) exclusion applied regardless of whether he had contracted to work for more than 52 hours because he ended up working fewer than 52 hours before his injury.

Padron also contended that, even if he was not excluded from workers' compensation under section 3352(a)(8)(A), he could still sue in tort pursuant to section 3706 because Osoy's homeowners' insurance policy did not provide workers' compensation coverage for Padron. Padron further contended that Osoy was estopped to rely on the exclusivity defense because Osoy and his insurer did not inform Padron he was entitled to workers' compensation.

## E. Osoy's Reply Brief

In his reply brief, Osoy contended his failure to allege an affirmative defense of exclusivity did not preclude him from asserting that defense because Padron's complaint had raised the issue. As to the defense itself, he contended that section 3352(a)(8)(A) did not exclude Padron from workers' compensation coverage because it was undisputed that Padron was contracted to work for more than 52 hours. Osoy also contended that his homeowners' insurance policy, through its language and by operation of law, provided the required workers' compensation coverage. In addition, Osoy asserted he was not estopped from relying on the exclusivity defense, pointing out that Padron admitted to receiving a workers' compensation claim form from Osoy's insurer.

## F. The Trial Court Grants Summary Judgment

7

After hearing arguments and taking the matter under submission, the trial court granted Osoy's motion for summary judgment. The court first found that Osoy could rely on the exclusivity defense, even though he did not plead it as an affirmative defense, because Padron had placed the defense in issue in his complaint. The court concluded the exclusion in section 3352(a)(8)(A) did not apply, finding it was undisputed that the parties had contracted for Padron to do residential work for more than 52 hours and that this placed Padron outside the statute's exclusion language. The court rejected Padron's argument that he was not covered for workers' compensation under Osoy's homeowners' insurance policy. The court "f[ound] no basis of estoppel from asserting workers' compensation exclusivity simply based on [Osoy]'s alleged knowledge of the injury and inability of [Padron] to continue working. Nothing in the evidence cited . . . indicates an intentional act to deprive [Padron] of rights to bring a workers' compensation claim with the insurer or even actual deprivation of said claim, even if the claim information was not provided."

After the trial court entered judgment in favor of Osoy, Padron timely appealed.

## DISCUSSION

Padron contends we should reverse for three reasons. First, he argues Osoy could not rely on a workers' compensation exclusivity defense to obtain summary judgment. Second, Padron argues there are triable issues whether he is a residential "employee" under sections 3351(d) and 3352(a)(8)(A). Lastly, he argues that even if he is an "employee" subject to workers' compensation, there are triable issues whether Osoy failed to procure workers' compensation insurance to cover Padron's

8

injury, which if true would entitle Padron to seek tort remedies. After a brief discussion of basic summary judgment and workers' compensation principles, we address each of Padron's arguments.

## A. Summary Judgment Principles and the Standard of Review

In moving for summary judgment, "[a] defendant . . . has met [his or her] burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.  The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)  A triable issue of material fact exists " ' "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.]' [Citations.]" (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 389-390.)

"We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence

9

in favor of that party.  [Citation.]'  [Citation.]" (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.)  "We . . . are not bound by the reasons in [the trial court's] summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Joshi v. Fitness Internat., LLC* (2022) 80 Cal.App.5th 814, 824.)

## B.     Workers' Compensation Principles

"As a general rule, an employee who sustains an industrial injury 'arising out of and in the course of the employment' is limited to recovery under the workers' compensation system." (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1001.)  "The underlying premise behind this" rule, which we refer to as the exclusivity defense, is that " 'the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' " (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 811.)

Whether workers' compensation exclusivity applies "generally turns on the workers' compensation definition of 'employee.' " (*California State Automobile Assn. Inter-Ins. Bureau v. Workers' Comp. Appeals Bd.* (2006) 137 Cal.App.4th 1040, 1043.)  Here, whether Padron was an "employee" subject to workers' compensation exclusivity turns on the applicable provisions of sections 3351(d) and 3352(a)(8)(A).

In exchange for being immune from tort liability, section 3700 requires an employer to "secure the payment of compensation by obtaining [workers' compensation] insurance from an authorized carrier or by securing a certificate of consent

10

from the Director of Industrial Relations to become a self-insurer." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 461; see also § 3700.) "If any employer fails to secure the payment of compensation, any injured employee . . . may bring an action at law against such employer for damages, as if [workers' compensation] did not apply." (§ 3706.)

## C. Osoy Could Assert an Exclusivity Defense

Padron raises two initial objections to our consideration of Osoy's exclusivity defense, one procedural and one factual. Padron first contends as a procedural matter that Osoy cannot rely on the exclusivity defense because Osoy did not affirmatively plead it in his answer. The trial court concluded that Osoy was not required to plead the defense in his answer because Padron's complaint "preemptive[ly] address[ed]" the issue. We agree. Osoy's answer included a general denial of Padron's allegations (Code Civ. Proc., § 431.30) which "denies in one sentence all the allegations of the complaint" and "allows the denying party the opportunity to present evidence to refute the allegations in the complaint." (*Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1545.) Padron's complaint alleged that he was excluded as an "employee" for workers' compensation purposes, specifically citing section 3352.[4] By denying this allegation in the answer, Osoy was permitted at the summary judgment stage to argue Padron was not excluded under section 3352 from workers' compensation coverage.

---

[4] Padron erroneously cited section 3352, subdivision (h); as of January 1, 2018, subdivision (h) of section 3352 had been redesignated as subdivision (a)(8). (Stats. 2017, ch. 770, § 4.)

Additionally, "courts generally have allowed an affirmative defense to be asserted for the first time in a motion for summary judgment 'absent a showing of prejudice.' [Citation.]" (*Atkins v. St. Cecilia Catholic School* (2023) 90 Cal.App.5th 1328, 1341.) Padron makes no attempt to show prejudice. Nor was Padron in fact prejudiced, given that he addressed the issue of whether section 3352 excluded him from workers' compensation in his complaint and thus was alert to that issue from the get-go. *Doney v. Tambouratgis* (1979) 23 Cal.3d 91, upon which Padron relies, is inapposite because the plaintiff there had not alleged in her complaint any facts suggesting she was employed by the defendant, and the defendant did not assert the exclusivity defense until moving for a nonsuit, unquestionably resulting in unfair prejudice. (*Id.* at p. 99.)

Padron also contends the trial court erred in granting summary judgment because there is a triable issue whether Osoy should be estopped from relying on the exclusivity defense. As the factual predicate for this estoppel claim, Padron relies on evidence that Osoy and his insurer delayed informing Padron that he was entitled to workers' compensation benefits and providing him with a claim form.

"The basic principles of equitable estoppel are well established and easily stated. 'Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' (Evid. Code, § 623.) ' "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall

12

be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ' [Citation.]" (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37.) In addition, " ' "in order to work an estoppel," ' a representation ' "must generally be a statement of *fact*. It can rarely happen that the statement of a proposition of law will conclude the party making it from denying its correctness, except when it is understood to mean nothing but a simple statement of fact." [Citation.]' " (*Steinhart v. County of Los* Angeles (2010) 47 Cal.4th 1298, 1315.)

Despite raising a claim of estoppel, Padron did not adduce any evidence to show that Osoy or AAA made any factual misrepresentations regarding Padron's eligibility for workers' compensation coverage. Even if Osoy and AAA remained silent as to whether Padron was eligible for workers' compensation benefits, such inaction does not show a triable issue of affirmative conduct intended to convey facts to Padron regarding potential workers' compensation coverage.[5] There is also no

---

[5] Padron asserts that he received $5,000 from AAA under its policy's " 'medpay' " coverage, which is separate from the policy's workers' compensation coverage, and that this payment further evinces a triable issue that Osoy/AAA should be estopped from asserting the exclusivity defense. However, Padron fails to identify any evidence showing the circumstances of such a payment or even that such a payment was made. We accordingly disregard this unsupported assertion. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 [appellate court may disregard "unsupported factual assertions even on de novo review of a summary judgment"].)

13

evidence that Padron ever suggested that he was entitled to workers' compensation or that he asked about it, and was dissuaded from claiming it.

Padron relies on *Honeywell v. Workers' Comp. Appeals Bd.*, *supra*, 35 Cal.4th 24 and *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, but neither case supports estoppel here. Both cases address estoppel in contexts relating to the administration of a workers' compensation claim within the workers' compensation system. *Honeywell* discussed whether an employer could be estopped from denying workers' compensation liability under section 5402 when it has knowledge of an industrial injury and fails to take certain actions. (*Honeywell*, at p. 37.) *Braewood Convalescent Hospital* applied section 4600, which states that an employer is to provide treatment "that is reasonably required to cure or relieve the injured worker from the effects of the worker's injury," and where the employer fails or refuses "reasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment." (§ 4600, subd. (a).) The court concluded that the employer's failure to identify and offer a specific treatment estopped it from objecting to the employee's selection of an equivalent treatment program. (*Braewood Convalescent Hospital*, at pp. 165-166.)

Attempting to analogize to *Honeywell* and *Braewood Convalescent Hospital*'s discussion of these statutes, Padron notes that section 5401 requires an employer to provide an employee with a claim form within one working day of when the employer receives notice or otherwise becomes aware of a potential industrial injury. (§ 5401, subd. (a).) It is undisputed that Osoy failed to comply with this requirement, and that Padron was not

provided with a workers' compensation claim form until after he had filed suit. However, "the remedy for breach of an employer's duty to notify [under section 5401] is a tolling of the statute of limitations if the employee, without that tolling, is prejudiced by that breach." (*Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd.* (1985) 39 Cal.3d 57, 64.) Padron cites no authority for the proposition that an employer who fails to timely provide a workers' compensation claim form is estopped to assert that an injured worker is subject to workers' compensation or thereby waives otherwise applicable exclusivity provisions.

## D. Padron Was Not Excluded from Workers' Compensation Coverage

### 1. *Section 3351(d)*

Padron next argues there was a triable issue whether he was an " '[e]mployee' " under section 3351(d) and thus subject to workers' compensation exclusivity. As previously noted, section 3351(d) defines an " '[e]mployee' " as a "person employed by the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant."

It is undisputed Osoy hired Padron to perform a remodeling project on Osoy's home. In *Zaragoza v. Ibarra* (2009) 174 Cal.App.4th 1012, the court held that a project to construct six different rooms on the homeowner's property fell within the scope of "duties . . . incidental to the ownership, maintenance, or use of the dwelling" as described in section 3351(d). (See *Zaragoza*, at pp. 1015, 1020.) The court surveyed cases applying section 3351(d) and "conclude[d] that home improvement projects do

15

indeed fall within" the provision. (*Zaragoza*, at p. 1020, citing *Heiman v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 724, 729 [installation of rain gutters], *California State Automobile Assn. Inter-Ins. Bureau v. Workers' Comp. Appeals Bd.*, *supra*, 137 Cal.App.4th 1040 [interior painting], and *Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 230, 235 [roof repairs].) The court also noted that, under section 3202, it was to interpret section 3351(d) liberally in favor of coverage. (*Zaragoza*, at pp. 1020-1021.)

We find no reason to depart from *Zaragoza* or the cases it cites, and conclude that Padron was an " '[e]mployee' " as defined in section 3351(d) because his installation of skylights in Osoy's home was "incidental to the ownership, maintenance, or use of the dwelling." (§ 3351(d).)**6** *Scott v. Workers' Comp. Appeals Bd.* (1981) 122 Cal.App.3d 979, upon which Padron relies, is inapposite because the injury occurred during the initial construction of a house before it even had a roof. (*Id.* at p. 986.) The court concluded that the reference in section 3351(d) to duties " 'incidental to' the ownership, maintenance, or use of the

---

**6** We reject Padron's argument that Osoy failed to adequately address in his summary judgment motion whether Padron was an " '[e]mployee' " under section 3351(d). Osoy satisfied his initial burden to show Padron fit within the scope of the statute by adducing evidence that he had hired Padron to work on a home remodeling project, including evidence about the scope of the project. Furthermore, "it is the pleadings that circumscribe the issues presented in a summary judgment or summary adjudication proceeding" (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 952), and here Padron alleged he was excluded from workers' compensation under section 3352, which is at issue only if section 3351(d) applies in the first place.

16

dwelling," "contemplates a completed dwelling or at least a building sufficiently completed to be occupied as a residence." (*Scott*, at p. 985, fn. omitted.) Padron's reliance on *Cortez v. Abich* (2011) 51 Cal.4th 285 is also misplaced, as the issue in that case was the scope of section 6303, subdivision (b), a part of Cal-OSHA; the court did not interpret section 3351(d) or any other part of the workers' compensation scheme. (*Cortez*, at pp. 293-295.)

   2.    *Section 3352(a)(8)(A)*

   Pursuant to section 3352(a)(8)(A), an " '[e]mployee' " under section 3351(d) is excluded from workers' compensation coverage where the "employment by the employer to be held liable, during the 90 calendar days immediately preceding the date of injury . . . [¶] . . . was, or was contracted to be, for less than 52 hours." (§ 3352(a)(8)(A).)

   The undisputed evidence established that Osoy and Padron entered a contract for employment which was to last more than 52 hours. Padron testified at deposition that he planned for the job to take 10 to 12 days, eight hours per day. Padron further testified that he told Osoy the project would take that long, and they "agreed." Thus, Padron's work for Osoy did not satisfy the requirement of section 3352(a)(8)(A) that "[t]he employment . . . was contracted to be . . . for less than 52 hours."

   Although Padron contracted to do work for more than 52 hours, he was injured after less than 52 hours of work. Padron contends that we should read the portion of section 3352(a)(8)(A) stating "[t]he employment was . . . for less than 52 hours" to exclude him from workers' compensation even when the employment was contracted to be for more than 52 hours. As we explain next, we interpret the statute differently.

17

### a.    Principles of statutory construction.

"Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.  [Citation.]  ' " 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.'  [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided.  [Citation.]"  [Citation.]'  [Citation.]" (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.)  " ' "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose."  [Citation.] . . . .  "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." . . .'  [Citations.]"  (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388.)  However, we may not "rewrite [a] statute so as to make it conform to a presumed intention which is not expressed."  (*California Teachers Assn. v. Governing Board of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633.)  When statutory language is ambiguous, "we may 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.  [Citations.]'  [Citation.]" (*Baker v. Workers' Comp. Appeals Bd.* (2011) 52 Cal.4th 434, 446.)

We also must give force to legislative amendments.  "We generally infer a change in meaning from a change in statutory language.  An ' "essential change in the phraseology of a

18

statutory provision would indicate an intention on the part of the legislature to change the meaning of such provision rather than interpret it." ' [Citation.] This is especially true if a court has construed the old statute as having a particular meaning." (*Allied Premier Ins. v. United Financial Casualty Co.* (2023) 15 Cal.5th 20, 33.)

An additional interpretive rule applies in the workers' compensation context. The Legislature has directed that workers' compensation statutes "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) "This command governs all aspects of workers' compensation" including "statutory construction. [Citations.] Thus, '[i]f a provision in [the (Workers' Compensation) Act] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible.' [Citation.] The rule of liberal construction 'is not altered because a plaintiff believes that [she] can establish negligence on the part of [her] employer and brings a civil suit for damages.' [Citation.] It requires that we liberally construe the [Workers' Compensation] Act 'in favor of *awarding work*[*ers*'] *compensation*, not in permitting civil litigation. [Citation.]' [Citations.]" (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065; accord, *State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1997) 16 Cal.4th 1187, 1196 [where a workers' compensation statute can be reasonably interpreted to provide coverage, the court " 'must decide for coverage' "].) Therefore, courts give exclusions to coverage a "narrow construction." (*Minish v. Hanuman Fellowship, supra,* 214 Cal.App.4th at p. 466, fn. 16.)

19

b.      History of section 3352(a)(8)(A).

In 1975, the Legislature added subdivision (d) to section 3351 to include as an "employee" for workers' compensation purposes "[a]ny person employed by the owner of a private dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the performance of household domestic service. . . ."  (Stats. 1975, ch. 1263, § 4; *In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 735 & fn. 16.)  The statute became effective on January 1, 1977.  Later that year, the Legislature passed urgency legislation to address problems with the provision, including that it "contained no time or wage minima, thereby including one-time or casual employees within the system and subjecting the householder to possible liability for benefits to such workers."  (*State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.*, *supra*, 16 Cal.4th at p. 1205 (dis. opn. of Werdegar, J.).)  "The 1977 legislation added subdivision (h) to section 3352, excluding [from workers' compensation coverage] domestic workers who worked less than 52 hours or earned less than $100 from a given employer in the 90 days before the injury."  (*Ibid.*; Stats. 1977, ch. 17, § 18.)

After its enactment, courts interpreted section 3352, subdivision (h) to apply based on the number of hours actually worked by the worker during the relevant 90-day period, without reference to the length of any contract.  (E.g., *California State Automobile Assn. Inter-Ins. Bureau v. Workers' Comp. Appeals Bd.*, *supra*, 137 Cal.App.4th at p. 1044; *Rosas v. Dishong* (1998) 67 Cal.App.4th 815, 821; *Stewart v. Workers' Comp. Appeals Bd.* (1985) 172 Cal.App.3d 351, 355-356.)

Decades later, the statute was again changed.  Effective January 1, 2017, the Legislature amended section 3352, former subdivision (h) so that it applied, as relevant here, to a worker "whose employment by the employer to be held liable, during the 90 calendar days immediately preceding the date of injury . . . [¶] . . . was, or was contracted to be, for less than 52 hours."  (*Id.*, former subd. (h)(1); Stats. 2016, ch. 205, § 2.)  The next year, the provision was redesignated as subdivision (a)(8)(A) of section 3352, with minor changes not relevant here.  (Stats. 2017, ch. 770, § 4.)

        c.      <u>Section 3352(a)(8)(A) excludes workers who have worked fewer than 52 hours unless they contracted to work for more than 52 hours.</u>

Section 3352(a)(8)(A) sets forth two tests—whether "[t]he employment was . . . for less than 52 hours" and whether "[t]he employment . . . was contracted to be . . . for less than 52 hours"— related by the word "or."  Typically, " ' "[w]hen used in a statute, the word 'or' indicates an intention to designate separate, disjunctive categories."  [Citation.]' [Citation.]" (*People v. Vasquez* (2016) 247 Cal.App.4th 513, 519.)  " 'In its ordinary sense, the function of the word "or" is to mark an alternative such as "either this or that." ' " (*In re Jesusa V.* (2004) 32 Cal.4th 588, 622.)

Under Padron's interpretation, the existence of a contract is trifling because whether a worker is subject to section 3552(a)(8)(A)'s exclusion essentially rises or falls based on whether 52 hours or more of work occurred before injury without consideration of any applicable contract terms.  The only time the existence of a contract would make any difference to the applicability of the exclusion distinct from the number of hours

21

worked would be where the following uncommon trifecta hits: the work is contracted to be for less than 52 hours, it ends up taking longer than 52 hours, and the worker is injured after the 52-hour point. In that case, and only in that case, would someone who worked more than 52 hours be excluded from workers' compensation. But if the two tests overlap to such a significant extent, it is incongruous to relate them with the word "or," which connotes separate, dissimilar alternatives. (See *Carrasco v. State Personnel Bd.* (2021) 70 Cal.App.5th 117, 141 [interpreting " 'or' " to mean " 'either this or that' " "applies when a statute uses the word 'or' to differentiate separate, distinct categories"].)

"While not of controlling importance, punctuation is part of a statute and should be considered in its interpretation in attempting to give the statute the construction intended by the drafter." (*Roland v. Superior Court* (2004) 124 Cal.App.4th 154, 163.) "Where, as here, a phrase 'is set off from the rest of the main sentence by commas,' it 'should be read as a parenthetical [phrase]' because such a grammatical structure 'indicates an intent to segregate th[e] [phrase] from the rest of the sentence.' " (*Dow v. Lassen Irrigation Co.* (2013) 216 Cal.App.4th 766, 783.) The parenthetical phrase "or was contracted to be" is thus an "explanatory . . . phrase . . . set off by punctuation" (*Merriam Webster's Collegiate Dict.* (11th ed. 2020) p. 900, col. 2 [defining parenthetical]), not merely an additional ground for applying the exclusion. If one reads the statute as Padron suggests, however, there would be no need for any commas at all; the statute could just say, "The employment was or was contracted to be for less than 52 hours."

We find it more persuasive to construe the two tests in section 3352(a)(8)(A)—"[t]he employment was . . . for less than 52

22

hours" and "[t]he employment . . . was contracted to be . . . for less than 52 hours"—as each applying under different, mutually exclusive circumstances. If the employment "was contracted to be" for an ascertainable time period, then the length of the contracted time period determines whether the exclusion applies. If the work was contracted to be for less than 52 hours, the exclusion applies even if the worker takes longer to finish the job. Likewise, if the work was contracted to be more than 52 hours, the exclusion does not apply regardless of whether the injury happens before 52 hours of work have occurred. If the employment was not "contracted to be" for an ascertainable time period, then the length of the actual work determines whether the exclusion applies.

In this way, the two tests are true alternatives, properly related by "or" as the word is commonly used.[7] Our construction honors the grammatical structure of section 3352(a)(8)(A), with "or was contracted to be" being separated from the rest of the sentence by commas. It also follows the legislative directive that we are to construe workers' compensation statutes "liberally . . .

---

[7] This interpretation is also consistent with another established meaning of the word " 'or' " "to indicate 'the synonymous, equivalent, or substitutive character of two words or phrases,' such as in the example 'lessen or abate.' " (*People v. Harper* (2020) 44 Cal.App.5th 172, 194; see also *Merriam Webster's Collegiate Dict.*, *supra*, p. 872, col. 1 [explaining "or" can be used to mean "the equivalent or substitutive character of two words or phrases <lessen~abate>"].) Reading "or" in this way, the two tests apply in parallel fashion to the two categories of employment: (1) employment "contracted to be" for an ascertainable time period, and (2) employment not performed under such a contract.

with the purpose of extending their benefits for the protection of persons injured in the course of their employment" (§ 3202), and the corollary directive to construe exceptions narrowly. (*Arriaga v. County of Alameda*, *supra*, 9 Cal.4th at p. 1065; *Minish v. Hanuman Fellowship*, *supra*, 214 Cal.App.4th at p. 466, fn. 16.)[8]

Lastly, public policy favors construing the 2016 amendment to section 3352(a)(8)(A) to equate someone working for more than 52 hours without a contracted time period with someone contracting to work more than 52 hours so as to avoid having workers' compensation coverage depend on the arbitrary timing of the injury. (See *Baker v. Workers' Comp. Appeals Bd.*, *supra*, 52 Cal.4th at p. 447 [courts can consider public policy among other factors in construing statutory language susceptible to more than one reasonable interpretation].)[9] Another statutory

---

[8] We further note our construction mirrors that of two Workers' Compensation Appeals Board panels which interpreted the exclusion in section 3352(a)(8)(A) to not apply when the employment is contracted to be for 52 or more hours, even where the employee actually worked less than 52 hours before the injury. (*Cardenas v. Calvillo* (Oct. 24, 2024, ADJ17176604) [2024 WL 4659765 at p. *4]; *Arambul v. Ortiz* (Feb. 3, 2020, ADJ11663247) [2020 WL 755359 at p. *2].) "[Workers' Compensation Appeals Board] panel decisions are 'citable authority, especially as an indication of contemporaneous interpretation and application of workers' compensation laws.' [Citation.]" (*City of South San Francisco v. Workers' Comp. Appeals Bd.* (2018) 20 Cal.App.5th 881, 896-897 & fn. 16.) In neither case, however, did the panel engage in any analysis to construe the statute.

[9] The legislative materials regarding the 2016 amendment of section 3352, former subdivision (h) state only that the bill made "technical and clarifying changes to the provision excluding

24

provision corroborates this public policy. Where a worker falls within the scope of section 3351(d) and the employer has failed to secure the payment of workers' compensation, the worker is eligible for workers' compensation and can sue in tort when they have "engaged in casual employment *where the work contemplated is to be completed* in not less than 10 working days, without regard to the number of persons employed, and where the total labor cost of the work is not less than one hundred dollars ($100)." (§ 3715, subd. (b), italics added.) Nothing in section 3715 makes its remedy contingent on the timing of the injury; the focus instead is on the length of the expected work at the time it begins. This suggests that the Legislature is of the view that one should look to the expected length of employment at the time of contracting, not just the time worked before an injury occurs—a result consistent with our interpretation of the 2016 amendment.

In conclusion, section 3352, subdivision (a)(8) provides that a worker who worked under a contract that was to be for 52 or more hours, and who was paid at least $100, is not excluded from workers' compensation even when the injury occurs before the 52-

specified persons from the definition of employee." (See, e.g., Legislative Counsel's Digest, Assem. Bill No. 2883, as amended June 13, 2016, at p. 3.) Neither party identifies any other evidence of legislative intent behind the 2016 bill. Padron refers to legislative materials regarding the 2017 legislation, but that legislation only redesignated former subdivision (h) of section 3352 as subdivision (a)(8), along with other minor changes not relevant here (Stats. 2017, ch. 770, § 4); as noted, the amendment adding the "was contracted to be" language was accomplished by the 2016 legislation and was effective January 1, 2017 (Stats. 2016, ch. 205, § 2).

hour mark.  As there is no triable issue that this description applies to Padron, he is not excluded from workers' compensation and cannot sue in tort.

## E.  Osoy Secured Payment of Workers' Compensation Benefits

Padron lastly contends that even if he is subject to workers' compensation exclusivity, section 3706 permits him to "bring an action at law" because Osoy failed "to secure the payment of compensation" via workers' compensation insurance as required by section 3700.  Additionally, as just explained, when section 3706 applies, an injured worker who is deemed an " '[e]mployee' " under section 3351(d) and is "engaged in casual employment where the work contemplated is to be completed in not less than 10 working days, without regard to the number of persons employed, and where the total labor cost of the work is not less than one hundred dollars ($100)," can sue in court for tort damages.  (§ 3715, subd. (b).)

Sections 3706 and 3715, subdivision (b) are inapplicable here.  It is undisputed that Osoy had a homeowners' insurance policy which included workers' compensation coverage.  An employer satisfies section 3700 by obtaining insurance covering liability for workers' compensation benefits.  (§ 3700, subd. (a).)  Given that Osoy obtained this coverage, he complied with section 3700.  That is because, "If the owner of a residential dwelling purchases comprehensive personal liability insurance, the policy for insurance must provide coverage for workers' compensation benefits (Ins. Code, § 11590) for *any person* employed by the owner of a residential dwelling whose duties are incidental to the maintenance of the dwelling (. . . § 3351[(d)])—unless such person" is excluded by section 3352, subdivision (a)(8).  (*State*

26

*Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.*, *supra*, 16 Cal.4th at p. 1194.)

Osoy's policy differed from the current language of section 3352(a)(8)(A), in that it provided coverage only when the injured worker had "actually been engaged in . . . employment . . . for no less than 52 hours," with no reference to the amount of hours contracted—in other words, tracking the old and now superseded statutory language. Based on this, Padron argues that he is excluded from coverage because he worked fewer than 52 hours. This argument fails because, by operation of law (Ins. Code, § 11590), Osoy's policy must be construed to afford coverage when an injured worker is deemed an " '[e]mployee' " under sections 3351(d) and 3352, subdivision (a)(8). (*State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.*, *supra*, 16 Cal.4th at p. 1194.) Furthermore, the insurance policy itself mandates this construction, as it provides, "The terms of [the policy's workers' compensation and employers' liability coverage] which are in conflict with the provisions of the California Workers' Compensation Law are hereby amended to conform to that law." Thus, Osoy's policy covered Padron because, as we have explained, he is an " '[e]mployee' " under the current version of sections 3351(d) and 3352, subdivision (a)(8).

Padron points out he is yet to receive any workers' compensation benefits under Osoy's policy. Putting aside that there is no evidence in the record Padron ever applied for such benefits, to the extent Padron argues his failure to receive such benefits means that Osoy has failed to "secure the payment of compensation" under section 3706, the law is to the contrary. An employer satisfies its obligation to "secure the payment of compensation . . . [¶] . . . [b]y being insured against liability to

27

pay compensation." (§ 3700, subd. (a).)  When an employer has a policy with workers' compensation coverage, an employee cannot bring a claim under section 3706 based on evidence the injured worker has yet to receive payment or other benefits under the policy.  (*Campos Food Fair v. Superior Court* (1987) 193 Cal.App.3d 965, 968.)

## DISPOSITION

The judgment is affirmed.  Osoy is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.